IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COUNCIL OF UNIT OWNERS OF            *
ELLICOTT HILLS CONDOMINIUM II, INC.
                                     *       Civil Action No. CCB-21-2991
v.
                                     *
THE CINCINNATI INSURANCE
COMPANY                              *

**************

## MEMORANDUM

This case concerns a dispute as to the applicability of an appraisal clause in a commercial insurance contract. The plaintiff, the Council of Unit Owners of Ellicott Hills Condominium II, Inc. ("Ellicott Hills"), has brought an action to enforce arbitration regarding the appraisal of damage to the roofs of two of their condominium units located at 2520 and 2530 Kensington Gardens, Ellicott City, Maryland. (ECF 1, Petition to Enforce, ¶ 1). The units are insured by the defendant, the Cincinnati Insurance Company ("Cincinnati"), which disputes the cause and policy coverage of a portion of the losses claimed by Ellicott Hills. Now pending before the court is Cincinnati's motion to dismiss (ECF 9). The motion has been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the court will grant the motion.

## BACKGROUND

On January 27, 2020, Ellicott Hills and Cincinnati entered into a Commercial Insurance Policy contract, whereby Cincinnati guaranteed coverage of Ellicott Hills's properties for storm damage, *inter alia*. (*Id.* ¶¶ 8, 10; ECF 1-1, Ex. 1, Ins. Policy). On or around the summer of 2020, a storm damaged the roofs of the insured properties, causing noticeable leaks inside the properties. (ECF 1 ¶ 9). Ellicott Hills submitted a claim for the damages, which was accepted by Cincinnati

1

as a covered loss. (*Id.* ¶¶ 10, 11). The parties independently conducted appraisals of the loss: Cincinnati's appraisal estimated the replacement cost value of the covered loss at $74,901.83 (*id.* ¶ 12; ECF 1-2, Ex. 2, Cincinnati Appraisal), while Ellicott's appraisal estimated the replacement cost value at $332,063.10 (ECF 1 ¶ 13; ECF 1-3, Ex. 3, Ellicott Appraisal). The parties' estimates differ because of a dispute as to the cost of specific repairs and, to a greater degree, the extent of repairs covered under the policy.

Ellicott Hills contends that, given this impasse and per the Insurance Policy agreement, Cincinnati is obligated to engage in an appraisal arbitration process. (ECF 1 ¶¶ 15, 16; ECF 1-1 at 64). This process for dispute resolution provides that "each party will select a competent, disinterested, and impartial appraiser" and that "the two appraisers will select an umpire." (ECF 1 ¶ 23; ECF 1-1 at 64).

On November 10, 2020, Ellicott Hills sent Cincinnati a demand for appraisal to determine the amount of loss under the process outlined in the Insurance Policy contract. (ECF 1 ¶ 19). On January 4, 2021, Cincinnati acknowledged the dispute but declined to engage in the process, and continued to decline Ellicott Hills's subsequent requests. (*Id.* ¶¶ 20, 21).

On November 22, 2021, Ellicott Hills filed the present petition to enforce the arbitration provision of the insurance policy. (*See* ECF 1). Cincinnati moved to dismiss the action (ECF 9); Ellicott Hills responded (ECF 11); and Cincinnati replied (ECF 12). The court now considers the motion.

## DISCUSSION

Cincinnati contends that the scope of loss covered by the insurance contract is a matter of law that should be addressed by the court and not through arbitration. In support of this position, Cincinnati states that it sent an investigator, Jesse Galliera, to examine the damage to the roofs.

(See ECF 9-5, Galliera Rep.). Mr. Galliera determined that the patterns visible on most of the damaged shingles were inconsistent with patterns typically produced by storm damage. (*Id.*). These patterns included "thermal cracking," "failed adhesive strips," and a "lack of creases on the upper sections of the exposed shingles" that he would expect to see on shingles damaged only by wind. (*Id.* at 10 ¶¶ 3-7). Mr. Galliera explained that the "30-year shingles manufactured by CertainTeed" were approximately fifteen years old and were allegedly discontinued because of frequent early onset defects, and relayed that he was told by a contractor working for Ellicott Hills that spot maintenance had been done to the roof before. (*Id.* at 6).

Cincinnati subsequently notified Ellicott Hills that the policy did not provide coverage for the portions of the roofs that Mr. Galliera had determined to be damaged by the early failure of the shingles, and not exclusively by wind damage. (*See* ECF 9-6, Cincinnati Letter Sept. 28, 2020). Per the policy agreement of the parties, loss due to normal wear is excluded from coverage. (*See* ECF 1-1 at 42) ("We will not pay for 'loss' caused by or resulting from . . . [w]ear and tear[; or r]ust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself"). Cincinnati's adjuster, Andrew Nurmi, then assessed only the 123.34 square feet of roof that he determined was wind damaged, yielding Cincinnati's $74,901.83 figure of covered losses. (*See* ECF 9-7, Nurmi Estimate Letter at 3).[1]

In "deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 137 (2000) (quoting *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779 (1993)). It is thus instructive to turn to the insurance policy's appraisal provision, which reads as follows:

---

[1] The parties' Commercial Insurance Policy defines "loss" to mean: "accidental physical loss or accidental physical damage." (ECF 1-1 at 72).

> If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will: a. Pay its chosen appraiser; and b. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we still retain our right to deny the claim.

(ECF 1-1 at 64).

Ellicott Hills contends that, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, 4, the appraisal provision requires the court to recognize and enforce the provision as a valid arbitration clause by appointing a neutral umpire.[2] While Ellicott Hills is correct that arbitration clauses are valid and enforceable under the FAA, *see State Auto. Mut. Ins. Co. v. Rod & Reel, Inc.*, No. CV-PWG-18-340, 2018 WL 5830734, at *5 (D. Md. Nov. 7, 2018), *aff'd*, 774 F. App'x 168 (4th Cir. 2019) (holding the FAA applied to a clause requiring appraisal and out-of-court dispute resolution in a case involving commercial insurance and fire damage),[3] and that the FAA establishes a "national policy favoring arbitration when the parties contract for that mode of

---

[2] 9 U.S.C. § 2 provides:
> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . .

9 USCS § 4 provides:
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . .

[3] Unpublished opinions are cited for the persuasiveness of their reasoning, not for any precedential value.

4

dispute resolution," *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (internal quotations and citation omitted), such a provision can only be invoked to cover disputes within its stated parameters.

Here, the parties disagree as to whether their dispute regarding the cause of damage to the insured properties can be characterized as a disagreement about the "amount of 'loss'" which is subject to the arbitration process laid out in the policy contract. (ECF 1-1 at 64). Whether the appraisal provision governs a dispute over the policy coverage of different types of damage to the insured properties is a matter of contractual interpretation, within the competence of the court to adjudge.

The appraisal provision does not purport to cover all disputes that arise under the insurance policy. Rather, it is a tailored approach to resolution of specific disputes, including, *inter alia*, the "amount of 'loss.'" (*Id.*). An appraisal process, such as the one provided by the policy contract, is a reasonable way for parties to determine the value of a loss *within* an agreed-upon scope of damage, but is not the appropriate forum to answer questions of contractual interpretation regarding the extent of coverage and exclusions under the policy.

While there appears to be no binding precedent in this instance, *Wausau Ins. Co. v. Herbert Halperin Distrib. Corp.* is instructive on this matter. 664 F. Supp. 987 (D. Md. 1987). In *Wausau*, a portion of the insured party's roof collapsed, and the insurer refused to cover a portion of the claim caused by "faulty design, construction or operational deterioration and wear and tear." *Id.* at 988. The insured party then sought to invoke an appraisal clause materially similar to the present provision. *Id.* Judge J. Frederick Motz determined that the issue of whether policy exclusions applied so as to limit the scope of coverage was one of contract interpretation for the court, not an appraiser, to resolve. *Id.* at 989. This is a different category of dispute than a hypothetical disagreement over whether, "as a factual matter a larger area than that immediately damaged by

5

the occurrence had to be repaired in order to repair the immediate damage itself," which "would constitute an 'amount of loss' question." *Id.* at 988-89. A number of courts across the country have since favorably cited *Wausau* in holding that causation, coverage, and liability disputes remain within the jurisdiction of the court, and not the appraiser, when the appraisal clause references determination of the "amount of loss." *See Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 684-85 (Tex. App. 1996) (citing *Wausau* as well as opinions from California, Maine, Michigan, Mississippi, Nevada, New York, and Oregon); *but see N. Glenn Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 854 N.W.2d 67, 71 (Iowa Ct. App. 2014) (one of a line of authorities holding that appraisers must be able to consider causation, as it is integral to appraisal of the amount of loss).

In response to this jurisprudential approach, Ellicott Hills contends that the FAA's national policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . [including if] the problem at hand is the construction of the contract language itself." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). No such dispute regarding the language of coverage in the contract exists here: losses due to high winds are covered, while losses due to wear and tear are not. (*See* ECF 1-1 at 39, 42). In addition, the Supreme Court has held that, under the FAA and the Court's precedent, "the question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) Parties *may* agree by contract that "an arbitrator, rather than a court, will resolve threshold arbitrability questions." *Id., see also High Country Arts & Craft Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629, 634 (4th Cir. 1997) (holding, while applying North Carolina law, that a similar appraisal provision "conferred on the appraisers only the right to determine 'the amount of loss,'" and therefore the parties were "not to be bound by the

appraisers' determinations of coverage issues" such as the application of a policy exclusion). Here, the parties have not explicitly contracted to allow the arbitrator to resolve disputes regarding the scope of arbitration itself.

Additionally, as Cincinnati has articulated, the policy contains a "reservation of right" clause which permits Cincinnati to deny a claim even after the completion of the appraisal process. (ECF 1-1 at 64) ("If there is an appraisal, we still retain our right to deny the claim"). It would be inefficient for Ellicott Hills and Cincinnati to conduct the appraisal process when the issue of causation at the heart of the dispute necessitates that the parties return to court under Cincinnati's reservation of right clause, as any determination by the appraisers would not be binding upon the parties.

Because Ellicott Hills and Cincinnati disagree as to the cause of the damage to the roofs, and this causation in turn determines policy coverage, this dispute is appropriate for decision in the judicial forum, rather than by arbitration.[4]

A separate Order granting Cincinnati's motion to dismiss follows.

8/26/22
Date

_CCB_
Catherine C. Blake
United States District Judge

---

[4] The court does not now rule on the merits of any claim Ellicott Hills may bring regarding damages owed under the policy.